**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED WHOLESALE MORTGAGE,
LLC,

     Plaintiff,

     v.

MADISON ATRINA LLC d/b/a District
Lending,

     Defendant.

Case No. 2:23-cv-13176
Hon. Laurie J. Michelson
Mag. J. Hon. Kimberly G. Altman

_____/

**DEFENDANT'S ANSWER TO UNITED WHOLESALE MORTGAGE
LLC'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 35]**

Defendant, Madison Atrina LLC d/b/a District Lending ("District Lending"), by and through its attorneys, Morganroth & Morganroth, PLLC, for its answer to Plaintiff, United Wholesale Mortgage LLC's ("UWM"), Motion for Summary Judgment [ECF No. 35] states as follows:

1. In answer to Paragraph 1, District Lending denies for reason untrue.

2. In answer to Paragraph 2, District Lending denies for reason untrue.

District Lending further denies for reason untrue that summary judgment on liability is appropriate inasmuch as there exist genuine issues of material fact which preclude summary judgment.

District Lending further denies for reason untrue that UWM has suffered any damages at all.

Finally, District Lending has raised numerous affirmative defenses involving factual disputes which, if resolved in favor of District Lending, defeat UWM's claim for breach of contract.

This Answer is further supported by the accompanying Brief.

WHEREFORE, District Lending respectfully requests that this Court DENY the

Motion in its entirety.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/ Jeffrey B. Morganroth
JEFFREY B. MORGANROTH (P41670)
JASON HIRSCH (P58034)
Attorneys for District Lending
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
Dated: July 29, 2026      jhirsch@morganrothlaw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE,
LLC,

    Plaintiff,

    v.

                                        Case No. 2:23-cv-13176
                                        Hon. Laurie J. Michelson
                                        Mag. J. Hon. Kimberly G. Altman

MADISON ATRINA LLC d/b/a District
Lending,

    Defendant.

_____/

# DEFENDANT'S BRIEF IN OPPOSITION TO UNITED WHOLESALE MORTGAGE LLC'S MOTION FOR SUMMARY JUDGMENT
## [ECF NO. 35]

## Statement of Issues Presented

1. Is UWM entitled to summary judgment where:

   a. There are genuine issues of material fact as to the existence of any valid and enforceable agreement between the parties which included the so-called "All-In" provision;

   b. There are genuine issues of material fact as to whether any breach could have occurred because there is no valid or enforceable agreement which included the sole provision UWM alleges was breached; and

   c. There are genuine issues of material fact as to the existence of any damages?

   District Lending Answers:              No.

   The Court Should Answer:              No.

2. Is UWM entitled to summary judgment where District Lending has raised numerous affirmative defenses which would negate UWM's single claim for breach of contract?

   District Lending Answers:              No.

   The Court Should Answer:              No.

## Controlling or Most Appropriate Authority

**Cases**

*Aetna Mortg. Co. v. Dembs*, 13 Mich. App. 686; 164 N.W.2d 771 (1968)

*Cincinnati Ins. Co. v. Hall*, 2013 Mich. App. LEXIS 1135 (June 20, 2013)

*Competition, Ltd. v. Mosier, Inc.*, 1987 U.S. Dist. LEXIS 15378 (W.D. Mich. Sep. 29. 1987)

*Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000)

*Roland v. Kenzie*, 11 Mich.App. 604; 162 N.W.2d 97 (1968)

*St. Clair Med., P.C. v. Borgiel*, 270 Mich.App. 260; 715 N.W.2d 914 (2006)

*XCO Int'l, Inc. v. Pac. Sci. Co.*, 369 F.3d 998 (7th Cir. 2004)

**Statutes**

Mich. Comp. Laws § 566.1

Mich. Comp. Laws § 566.132(1)

## Table of Contents

Statement of Issues Presented.................................................................... i

Controlling or Most Appropriate Authority ....................................... ii

Index of Authorities ................................................................... iv

Introduction..................................................................................1

Counter-Statement of Facts ...........................................................2

Procedural Posture ........................................................................7

Argument .....................................................................................8

   I.   Standard of Review ................................................................8

   II. Genuine Issues of Material Fact Exist as to Each Element of UWM's Claim which Preclude Summary Judgment .........................................9

      A.   There are Genuine Issues of Material Fact as to the Existence of Any Valid and Enforceable Agreement Containing the Ultimatum..........................9

      B.   UWM Cannot Demonstrate the Existence of Any Damages..............19

   III. District Lending's Defenses Preclude Summary Judgment....................25

Conclusion .................................................................................25

# Index of Authorities

**Cases**                                                                                                                      **Page(s)**

*Adell Broad. Corp. v. Apex Media Sales, Inc.*,
    269 Mich.App. 6; 708 N.W.2d 778 (2005) ....................................................14

*Aetna Mortg. Co. v. Dembs*,
    13 Mich. App. 686; 164 N.W.2d 771 (1968) .................................................18

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242; 106 S. Ct. 2505 (1986) ...........................................................9

*Celotex Corp. v. Catrett*,
    477 U.S. 317; 106 S. Ct. 2548 (1986) ...........................................................8

*Cincinnati Ins. Co. v. Hall*,
    2013 Mich. App. LEXIS 1135 (June 20, 2013) ............................................15

*Competition, Ltd. v. Mosier, Inc.*,
    1987 U.S. Dist. LEXIS 15378 (W.D. Mich. Sep. 29. 1987) ........................21

*Edoff v. Hecht*,
    270 Mich. 689; 260 N.W. 93 (1935) .............................................................21

*Floss v. Ryan's Family Steak Houses, Inc.*,
    211 F.3d 306 (6th Cir. 2000) ........................................................................16

*Holland v. Trinity Health Care Corp.*,
    287 Mich.App. 524; 791 N.W.2d 724 (2010) ...............................................10

*Howarth v. Feeney*,
    1992 R.I. Super. LEXIS 18, 1992 WL 813502 at 3 (R.I. Super. Jan. 15,
    1992) ..............................................................................................................24

*In Re Constr. Diversification, Inc.*,
    36 B.R. 434 (Bankr. E.D. Mich. 1983)................................................... 20, 21

*In re Exemplar Mfg. Co.*,
    331 B.R. 704 (Bankr. E.D. Mich. 2005)........................................................21

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
    475 U.S. 574; 106 S. Ct. 1348 (1986) ...........................................................8

*Nichols v. Seaks*,
    296 Mich. 154; 295 N.W. 596 (1941) .........................................................22

*Papo v. Aglo Rests.*,
    149 Mich.App. 285; 386 N.W.2d 177 (1986) ..............................................20

*Pine-Wood, Ltd. v. Detroit Mortg. & Realty Co.*,
    95 Mich. App. 85; 290 N.W.2d 86 (1980) ...................................................18

*Roland v. Kenzie*,
    11 Mich.App. 604; 162 N.W.2d 97 (1968) ..................................................24

*St. Clair Med., P.C. v. Borgiel*,
    270 Mich.App. 260; 715 N.W.2d 914 (2006) ..............................................20

*U.S. v. Diebold*,
    369 U.S. 654; 82 S. Ct. 993 (1962) ..............................................................9

*UAW-GM Human Res. Ctr. v KSL Rec. Corp.*,
    228 Mich.App. 486; 579 N.W.2d 411 .........................................................21

*Woodington v. Shokoohi*,
    288 Mich.App. 352; 792 N.W.2d 63 (2010) ...............................................12

*XCO Int'l, Inc. v. Pac. Sci. Co.*,
    369 F.3d 998 (7th Cir. 2004) .......................................................................23

**Other Authorities**

Black's Law Dictionary (7th ed., 1999)......................................................................11

Mich. Comp. Laws § 566.1......................................................................................14

Mich. Comp. Laws § 566.132(1).............................................................................17

**Rules**

Fed. R. Civ. P. 56 ....................................................................................................8

**Introduction**

As part of its disingenuous effort to increase its market share through threats, bullying, coercion and intimidation, UWM, purported to unilaterally implement its so-called "All-In" initiative in March 2021. Despite UWM's marketing gloss, this initiative was in fact an ultimatum to all independent mortgage brokers who worked with UWM to either surrender their independence, compromise their integrity and abdicate their fiduciary duties by agreeing not to send loans to UWM's competitors (Rocket Mortgage and Fairway)[1] or to cease doing business with UWM, and thereby foreclose their clients' ability to consider any loan product offered by UWM.

In reality, this initiative was an extension of UWM's long-standing policy of compelling ostensibly independent mortgage brokers to become a *de facto* sales force for UWM. UWM knew that by preventing *independent* mortgage brokers from working with UWM's competitors, a large volume of loans that would otherwise have gone to those competitors would instead go to UWM. Thus, UWM's claim of encouraging a thriving market of *truly independent* mortgage brokers was a mere façade – UWM wanted this market for itself and would go to great lengths to get it.

Specifically, if independent mortgage brokers did *not* agree to UWM's ultimatum, UWM would claim that it had the right to impose this condition upon the

---

[1] It is undisputed that Fairway has exited the wholesale lending business, so District Lending will refer only to Rocket Mortgage for the remainder of this Brief.

1

independent mortgage brokers who had signed up with UWM through unilateral modifications to existing agreements and subject any alleged violators to grossly punitive "liquidated damages" that had no nexus to any actual damage suffered by UWM (because there is no such damage at all). UWM would then agree to waive the entirely fabricated liquidated damages if *and only if* the brokers agreed to stop doing business with UWM's competitors and steered their business to UWM only.

**Counter-Statement of Facts**[2]

**Relationship Between UWM and District Lending**

District Lending is an independent mortgage broker founded in 2019 by Josh Rapaport. ECF No. 35-4, PageID.435 (p. 27). District Lending entered into a Wholesale Broker Agreement with UWM in March 2019 (the "2019 Wholesale Broker Agreement"). Exh. 1. As was standard in the industry, the 2019 Wholesale Broker Agreement did *not* prohibit District Lending from submitting mortgage loans to any wholesale mortgage lender of District Lending's choice and confirms that District Lending, as an independent mortgage broker, had no obligation to submit any mortgage loans to UWM at all pursuant to the Wholesale Broker Agreement. *Id.* Thus, pursuant to the 2019 Wholesale Broker Agreement, District Lending was free to submit mortgage loans to any lender of its choice, including UWM's direct competitors.

---

[2] UWM's alleged "Undisputed Facts" are highly contested as fully set forth herein.

2

The 2019 Wholesale Broker Agreement contained an express provision governing modifications which stated that "this Agreement may not be amended except in writing executed by authorized representatives of both Broker and UWM." Exh. 1 at § 7.01. The very same agreement also contained an entirely separate provision which, according to UWM, permits UWM only to unilaterally modify any terms of the wholesale broker agreement "without further signature or consent of any kind" from the independent mortgage broker. *Id*. at § 7.08. Although UWM's CEO claims that UWM does "the right thing always," it is hard to square this with UWM's alleged right to unilaterally alter agreements without signature or consent from the independent mortgage brokers it claims are the lifeblood of its business. Exhs. 10 at 180-181 (Ishbia)[3]; ECF No. 35-3, PageID.415 ("We're all in for brokers."), PageID.417 ("we're trying to make the brokers invincible."), PageID.418 ("At UWM we only grow if you grow.") (All-In announcement).

In order to independently serve its clients and determine the best deal for each particular borrower, District Lending maintained relationships with numerous mortgage lenders, but was not doing business with Rocket Mortgage at the time it executed the 2019 wholesale broker agreement. ECF No. 35-4, PageID.437 (pp. 36-37), PageID.443-444 (pp. 61-62).

---

[3] Exh. 10 will be submitted separately because UWM has improperly designated the entire transcript as confidential and has refused to retract such improper designation.

3

**UWM's Unilateral Implementation of the All-In Ultimatum**

On March 4, 2021, UWM announced its so-called "All-In" initiative (the "Ultimatum" or "All-In provision"). ECF No. 35-3. As part of the Ultimatum, UWM announced that it had decided to end its business relationship with any "Broker Partners" (UWM's term for independent mortgage brokers who had a relationship with UWM) who chose to continue originating loans with two specific lenders who had wholesale as well as retail lending divisions, Rocket Mortgage and Fairway Independent Mortgage, which UWM refers to as the "Select Retailer Lenders," and who are major direct competitors of UWM in the wholesale mortgage market. *Id*.

UWM then purported to unilaterally amend its Wholesale Broker Agreement to include the Ultimatum and an onerous liquidated damages provision, which imposed entirely punitive damages upon a broker partner for a breach of the Ultimatum. Exh. 2 at §§ 7.03, 3.03(x).

**District Lending Did Not Agree to Any Amendment**

Despite § 7.01's clear requirement for a "writing executed by authorized representatives," UWM has failed to produce any version of the 2021 Wholesale Broker Agreement signed by District Lending because there is none. Mr. Rapaport, District Lending's owner and its only authorized signatory, testified that he has no recollection of ever executing a renewal or amendment that included the Ultimatum. ECF No. 35-4, PageID.433 (p. 18), PageID.445 (p. 66). While § 7.19 of the 2019

4

Wholesale Broker Agreement does allow for execution via facsimile, email, or electronic signature, it does not authorize acceptance in any other manner as a substitute for the signed writing requirement. Exh. 2 at § 7.19. In fact, UWM does *not* contend that District Lending agreed to the purported amendment by any of these means. Rather, UWM contends that District Lending *de facto* agreed to the All-In provision simply by submitting loans to UWM under the terms of then-existing 2019 Wholesale Broker Agreement which UWM contends it unilaterally modified. ECF No. 35, PageID.333. UWM further contends that District Lending also agreed to the Ultimatum by executing mandatory yearly renewals in "early 2022 and 2023." *Id*.; ECF No. 35-11, PageID.548. But those purported online renewals are incomplete and were not acknowledged by District Lending, as more fully addressed below. *Id*.

Furthermore, UWM did not provide any new consideration for UWM's unilateral imposition of the material new terms, as confirmed by UWM's representatives. ECF 35-6, PageID.409 (Tucsok); ECF No. 35-10, PageID.541 (Fahey); Exh. 3 at 34 (Gomez); Exh. 4 at 49 (Slifko). In other words, UWM unilaterally added a brand new material term mandating a concession from independent brokers, *i.e.,* eliminating their right to use any lender of their choice, and imposed uncapped punitive liquidated damages for any alleged breach of the new prohibition, without any written agreement and without providing any additional consideration. *Id*.

## UWM Continues to Do Business With District Lending

Although District Lending did not believe it was bound by the Ultimatum because it had never actually signed any new wholesale broker agreement containing the Ultimatum, had never seen any electronic "pop up" indicating that District Lending was bound to any terms and was under the impression that the Ultimatum only applied to brokers who had been using Rocket Mortgage at the time UWM made its All-In announcement (which District Lending was not), UWM nonetheless claims that District Lending violated the Ultimatum when District Lending began doing business with Rocket more "at the end of 2022." ECF No. 35, PageID.333.

## UWM Monitors Loans Sent by Its Broker Partners

UWM uses numerous internal tools to monitor where Broker Partners send loans on a daily basis. Henry Gomez, a UWM senior vice president and division leader who managed account executives ("AE") including the AE for District Lending, testified that UWM used its internal monitoring tool, called "UWM versus Everybody," to monitor loans on a daily basis. Exh. 3 at 28, 37. Mikele McMacken ("McMacken"), who served as AE for District Lending after the Ultimatum was implemented, testified that she also used UWM versus Everybody, would monitor where loans were closed and confirmed that she had access to this information at any time. Exh. 5 at 26-27, 42-43.

6

**UWM Does Not Allege Any Breach Until March or April 2023**

Although UWM was monitoring where its Broker Partners like District Lending sent loans on a regular basis and therefore would have been aware of any alleged breach of the Ultimatum, UWM never notified District Lending of any alleged breach of the Wholesale Broker Agreement until March or April 2023, more than a year after UWM contends that District Lending began doing business with Rocket Mortgage. ECF No. 35, PageID.333; ECF No. 35-4, PageID.445 (pp. 68-69).

Thus, although UWM monitored all loans closed by its broker partners, UWM did not raise any claim for an alleged breach of the Ultimatum with District Lending for years, all the while UWM deliberately allowed its alleged liquidated damages, computed on a per loan basis, to continue to accrue, in order to increase its leverage to demand that District Lending steer more business to UWM. Indeed, UWM continued to reach out to District Lending to solicit business from District Lending even while it was suing District Lending in this lawsuit. See, e.g., Exh. 7.

**Procedural Posture**

On December 13, 2023, UWM filed its Complaint against District Lending. ECF No. 1. On April 23, 2024, UWM filed its First Amended Complaint (the "FAC"). ECF No. 17. Following the denial of District Lending's Motion to Dismiss, District Lending filed its Answer and Affirmative Defenses on April 14, 2025. ECF No. 24.

7

On April 13, 2026, UWM filed this motion seeking summary judgment even though numerous genuine issues of material fact exist which preclude summary judgment.[4] ECF No.35. UWM's Motion should be denied because there remain numerous genuine issues of material fact and District Lending has raised meritorious defenses, any one of which, if proven, defeats UWM's claim for breach of contract.

**Argument**

**I.     Standard of Review.**

Under Fed. R. Civ. P. 56, summary judgment is appropriate only when the moving party, in a properly supported motion, conclusively demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment in its favor as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323; 106 S. Ct. 2548 (1986). In deciding the motion, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587; 106 S. Ct. 1348 (1986). Where different ultimate inferences between the parties may properly be drawn, the case is not one for summary judgment. *U.S. v. Diebold*, 369 U.S. 654, 655; 82 S. Ct. 993 (1962).  In

---

[4] Pursuant to the Second Amended Scheduling Order, District Lending's response to this Motion is due 28 days after the deposition of Mat Ishbia was conducted in the case of *UWM v Atlantic Trust Mortgage Corp.*, E.D. Mich. Case No. 24-cv-10216. ECF No. 38, PageID.592. Mr. Ishbia's deposition was conducted on July 1, 2026, and District Lending therefore timely files this response on July 29, 2026. *Id*. District Lending intends to seek additional time for this deposition inasmuch as Mr. Ishbia was non-responsive and evasive during his time limited 4-hour deposition.

resolving the motion, the court may not undertake to evaluate the credibility of witnesses, weigh the evidence or resolve factual disputes; so long as the evidence in the record is such that a reasonable factfinder, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242; 106 S. Ct. 2505 (1986).

**II.    Genuine Issues of Material Fact Exist as to Each Element of UWM's Claim which Preclude Summary Judgment.**

In order to prevail, UWM must show there are no genuine issues of material fact as to: (1) the existence of a contract; (2) the breach of *that* contract; and (3) the existence of damages. Because there are genuine issues of material fact as to each of these elements, summary judgment is improper.

**A. <u>There are Genuine Issues of Material Fact as to the Existence of Any Valid and Enforceable Agreement Containing the Ultimatum</u>.**

UWM's claim for breach of contract is premised upon its allegation that District Lending somehow became bound to the amendment including the Ultimatum. However, there are genuine issues of material fact as to whether District Lending ever became bound to this provision. To the extent UWM was not bound to the Ultimatum, there is no allegation that District Lending breached the terms of the 2019 Wholesale Broker which did *not* contain the restriction.

9

### 1.  The Unsigned Amendment is Invalid on Its Face.

First, the 2019 Wholesale Broker Agreement prohibits its amendment *except* via a writing signed by both parties. Exh. 1 at § 7.01. Specifically, § 7.01 of 2019 Wholesale Broker Agreement states:

> **7.01. Amendment of Agreement**. Except as set forth on [sic] § 7.08, this Agreement may *not* be amended except *in writing executed by authorized representatives of both Broker and UWM*. *Id*. (emphasis added).

Clear and unambiguous contract language must be enforced as written. *Holland v. Trinity Health Care Corp.*, 287 Mich.App. 524, 527; 791 N.W.2d 724 (2010).

Notwithstanding this clear provision, UWM claims that the requirement that the agreement may be amended only in a writing signed by both parties is completely negated by a second provision, which, in stark contrast to § 7.01, permits UWM to *unilaterally* change any term of the Wholesale Broker Agreement at any time and insert whatever new terms and conditions UWM chooses to impose.

Specifically, UWM contends its forced implementation of the Ultimatum is permitted under § 7.08 of 2019 Wholesale Broker Agreement, which states:

> **7.08. UWM Amendments & Website.** This Agreement, and UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans … may be amended by UWM from time to time, and UWM will endeavor to provide broker with prompt notice thereof …. Broker agrees that the submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind. Any such amendment shall

10

apply to pending, and/or future Mortgage Loan Applications submitted by Broker. ECF No. 1-1, PageID.18 at § 7.08 (italics added).

In its March 31, 2025 Opinion and Order Denying District Lending's Motion to Dismiss the FAC, this Court held that § 7.08 provides a separate way to modify the Wholesale Broker Agreement in addition to the method set forth in § 7.01. ECF No. 23, PageID.253. But even under this Court's ruling, UWM's purported addition of *entirely new terms and conditions* in the form of the Ultimatum and liquidated damages provision do not amount to a mere *amendment* of any term, and therefore such purported amendment exceeds the scope of an amendment permitted by § 7.08.

Black's Law Dictionary defines an "amendment" as "A change made by addition, deletion or correction; an alteration in wording." Black's Law Dictionary (7th ed., 1999). Thus, by definition, the new terms and conditions unilaterally added by UWM are not mere "amendments" because they impose fundamentally new and different terms and conditions that previously did not exist at all.[5] While § 7.08 may permit UWM to *amend* an *existing* provision of the Wholesale Broker Agreement, it cannot reasonably be read to allow the unilateral implementation of entirely new terms which materially alter the fundamental basis of the relationship between the

---

[5] For example, § 3.03(s) requires a broker to "immediately notify UWM" of certain events which may impact a broker's licensure. Under § 7.08, UWM arguably could amend this section to set a time limit for the required notification or add a new circumstance impacting licensure about which UWM must be notified. Such changes would be true *amendments* because they would not impose entirely new terms never before present in the agreement at all.

11

parties and effectively re-write the agreement. Every word, phrase, and clause in a contract must be given effect, and a contract interpretation that would render *any* part of the contract surplusage or nugatory must be avoided. *Woodington v. Shokoohi*, 288 Mich.App. 352, 374; 792 N.W.2d 63 (2010). Therefore, UWM's right to amend pursuant to § 7.08 should not be read so broadly as to permit UWM to unilaterally impose an entirely new and different agreement that alters the fundamental nature of the relationship between the parties, without the consent of District Lending because such a reading would negate the word "amend" entirely.

UWM's Ultimatum clearly does alter the fundamental basis of the relationship between the parties. For example, McMacken testified that an independent mortgage broker has a responsibility to find the best loan available based on the client's particular circumstances. Exh. 5 at 59 (McMacken). Although UWM dismisses the impact of such a restriction upon an independent mortgage broker's ability to select certain lenders because there are many lenders available, this misses the point – District Lending entered into an agreement with UWM (and entered into similar agreements with other lenders) for the purpose of making such lender's various products available to District Lending's clients. UWM sought to unilaterally alter the entire basis of the relationship by restricting the roster of lenders from whom

12

District Lending could work with.[6]

Nonetheless, UWM contends it could unilaterally add the Ultimatum because it implemented this change as a new warranty that District Lending was purportedly required to make with each loan it sent to UWM. UWM's position makes no sense for two reasons: (1) UWM knew it required District Lending's consent in writing to this amendment because it required a yearly renewal through its on-line portal. ECF 35, PageID.333. If UWM believed that simply submitting a loan or loan application could amend the agreement to include the Ultimatum, why bother to ask for District Lending's consent via the online portal in a mandatory yearly renewal?; and (2) Regardless of UWM's characterization, the Ultimatum is *not* similar to the other representations and warranties provided by District Lending with each loan it submitted to UWM. Specifically, the Ultimatum does *not* apply to any particular loan being submitted to UWM at all but rather restricts District Lending's business relationships with *other* lenders. In contrast, other representations and warranties relate only to the loan being submitted include promises by District Lending that: (i) it is licensed in the jurisdiction where the loan was originated (Exh. 1 at

---

[6] Not coincidentally, the lenders excluded by UWM include one of the nation's largest mortgage lenders. A restriction that eliminates one of the largest mortgage lenders which directly competes with UWM on all aspects of a loan is simply not equivalent to eliminating a random lender from a pool of many. The exclusion of Rocket Mortgage fundamentally changes the competitive landscape. Instead of embracing market competition, to the benefit of the borrower, UWM sought to eliminate it.

§ 3.30(a)); (ii) all appraisals in connection with the submitted loan were performed by licensed appraisers (*Id*. at § 3.30(e)), (iii) no legal actions are pending that might affect the submitted loan (*Id*. at § 3.03(g)); and (iv) all information submitted by District Lending regarding the loan is accurate (*Id*. at § 3.303(i)).

Second, Michigan law expressly prohibits UWM's purported amendment because UWM did not provide any additional consideration therefor. Mich. Comp. Laws § 566.1 ("§ 566.1"). Specifically, although § 566.1 permits amendments to contracts without additional consideration, an amendment made *without* additional consideration is valid *only* where the amendment is *memorialized in a signed writing*. § 566.1 states:

> An agreement hereafter made to change or modify … any contract … shall not be invalid because of the absence of consideration: Provided, That the agreement changing, modifying, or discharging such contract …. shall not be valid or binding *unless it shall be in writing and signed by the party against whom it is sought to enforce the change*, modification, or discharge. (emphasis added).

The Michigan Court of Appeals has held that § 566.1 applies to *all types* of contracts. *Adell Broad. Corp. v. Apex Media Sales, Inc.*, 269 Mich.App. 6, 10; 708 N.W.2d 778, 781 (2005). This Court previously held that the *existence* of consideration is necessary to support an unsigned unilateral amendment but indicated that a court would not inquire into the sufficiency of such consideration. Therefore, this Court held, at the pleading stage, that UWM's allegation of the continuation of the business relationship was sufficient to satisfy the requirement of

14

§ 566.1.[7] ECF No. 23, PageID.261-262.

But an entirely illusory promise cannot amount to consideration. In *Cincinnati Ins. Co. v. Hall*, 2013 Mich. App. LEXIS 1135, *13 (June 20, 2013), the Michigan Court of Appeals held:

> An "illusory contract" is defined as an agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation. The insubstantial promise renders the agreement unenforceable. (internal citations omitted).

The Sixth Circuit has likewise analyzed this issue as follows:

> Promises may fail to create legally binding obligations for a variety of reasons. See17A Am. Jur. 2d Contracts § 139 (1991). Most notably, a promise may in effect promise nothing at all. Such an illusory promise arises when a promisor retains the right to decide whether or not to perform the promised act. See *Trumbull v. Century Marketing Corp.*, 12 F. Supp. 2d 683, 686 (N.D. Ohio 1998) (holding that employer's promise in employee handbook to arbitrate disputes did not create binding obligation when employer retains right to revoke arbitration provision); *David Roth's Sons, Inc.*, 343 S.W.2d at 391 (noting that a promise absent any fixed obligation to perform "is illusory in the sense that [the promisor] has made no legally enforceable commitment, and justice demands the other party should not be bound"). A promise is also illusory when its indefinite nature defies legal enforcement. See *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997) ("Under Kentucky law, an enforceable contract must contain definite and certain terms setting forth promises of performance to be rendered by each party."); *Jamestowne On Signal, Inc. v. First Federal Savings & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990) ("'Courts will not uphold agreements which are indefinite and uncertain as to the obligations imposed on the parties thereto.'") (quoting *Union State Bank v. Woell*, 434 N.W.2d 712 (N.D. 1989).

---

[7] There is no dispute that UWM did not provide any consideration other than the alleged continuing the business relationship.

15

*Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315 (6th Cir. 2000).

The facts show that the purported consideration of a continued business relationship is illusory, because there is no value in the alleged continuing business relationship for two distinct reasons: (1) it could be terminated at any time by either party[8]; and (2) UWM contends that mortgage lenders are interchangeable.

First, § 7.06 of the Wholesale Broker Agreement confirms that it "may be terminated by either party for any reason, with or without cause, breach of other justification, upon seven (7) days prior written notice." Exh.1 at § 7.06, Exh. 2 at § 7.06. Thus, purported continuation of the business relationship was indefinite and uncertain and imposed no obligations upon UWM (and certainly no obligations which UWM contends it could not unilateral alter).

Second, UWM contends that eliminating two mortgage lenders from the available options for independent mortgage brokers pursuant to the Ultimatum is irrelevant inasmuch as there are numerous other mortgage lenders to choose from. For instance, Ms. Deciantis testified that there is no harm to a mortgage broker by not being able to work with a Select Retail Lender because there are 65 other lenders from which to choose. ECF No. 35-2, PageID.361 (pp. 18-19). UWM cannot have its cake, and eat it, too. If there is no harm from the inability to work with a particular

---

[8] It is also worth noting that, according to UWM, any term of the agreement could be unilaterally changed by UWM, so effectively UWM made no promises at all, much less one to continue doing business with District Lending.

16

lender, the necessary corollary is that there is no inherent value in a continuing business relationship with a lender either. Thus, the purported consideration proffered by UWM is entirely illusory and cannot support UWM's unilateral change.

At a minimum, this raises a genuine issue of material fact as to whether real consideration existed at all. If the continuation of the business relationship was in fact valueless and illusory, there was no consideration at all.

### 2.  The Purported Amendment Violates the Michigan Statute of Frauds

Even if there was consideration for the purported amendment, the purported amendment is still void under the Michigan Statute of Frauds. Specifically, the Michigan Statute of Frauds expressly prohibits the implementation of the Ultimatum in the absence of a signed writing. Specifically, Mich. Comp. Laws § 566.132(1) states, in pertinent part,

> In the following cases an agreement, contract, or promise is *void* unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise, is *in writing and signed with an authorized signature by the party to be charged* with the agreement, contract, or promise …
>
> (e) An agreement, promise, or contract to pay a commission for or *upon the sale of an interest in real estate*. (emphasis added).

Pursuant to the Wholesale Broker Agreement, UWM promises to buy mortgage brokers a fee when a mortgage loan closes. Exh. 1 at § 2.04. A mortgage loan usually involves the sale of an interest in real estate. In *Pine-Wood, Ltd. v. Detroit Mortg. &*

17

*Realty Co.*, 95 Mich. App. 85, 89-90; 290 N.W.2d 86, 88 (1980), the Michigan Court

of Appeals held:

> An agreement to obtain a mortgage upon real estate is an agreement concerning an interest in real estate [governed by the Michigan Statute of Frauds]. *Wardell v Williams*, 62 Mich 50, 60; 28 NW 796 (1886).
>
> There is no dispute that the letter dated September 16, 1976, was a valid contract in full compliance with the statute; however, *any modification of this agreement concerning the eventual execution of a commercial mortgage must also be in writing to be effective. Michigan National Bank of Detroit v Holland-Dozier-Holland Sound Studios*, 73 Mich App 12, 17-18; 250 NW2d 532 (1976), MCL 556.1; MSA 26.978(1). Accordingly, absent the application of an exception to the above statute, the alleged oral modifications of the parties' agreement were invalid. (emphasis added).

See also, *Aetna Mortg. Co. v. Dembs*, 13 Mich. App. 686, 691; 164 N.W.2d 771,

773-774 (1968) ("Plaintiff herein bases his action upon an alleged oral agreement

for a commission in obtaining a mortgage on land. Under Michigan law *a mortgage*

*is an interest in land. The statute requires such agreement to be in writing and signed*

*by the party to be charged therewith*." (emphasis added, citation omitted)). Thus,

regardless of the existence of consideration based upon a continued business

relationship, the purported amendment of the Wholesale Broker Agreement by any

method other than a signed writing is void because it violates the Michigan Statute

of Frauds.

To the extent UWM contends that the alleged online yearly renewal in January

2022 constitutes a signed writing sufficient to satisfy the Statute of Frauds, this

18

cannot be the case and at least presents a genuine factual dispute. Mr. Rapaport testified that he had no recollection of every executing an online renewal and never saw any "pop-up" requiring his acknowledgment. ECF No. 35-4, PageID.445 (pp. 66-69). Furthermore, on its face, the alleged 2022 online renewal does *not* indicate that it was approved by Mr. Rapaport. Indeed, there is no acknowledgment date at all following the "acknowledged by Josh Rapaport on" section of the alleged renewal. ECF No. 35-11, PageID.548.

Registered by: jrapaport@districtlending.com on 2/27/2022 8:00:04 AM and last updated: 3/14/2022 12:30:01 PM.
E.S.A. acknowledged by: Josh Rapaport on

Assigned to AE: AE House Account

COMPLETE          RENEWAL COMPLETE/APPROVED

Likewise, the alleged February 2023 online renewal also does *not* indicate it was acknowledged by Mr. Rapaport. *Id.*, PageID.549.

### B. UWM Cannot Demonstrate the Existence of Any Damages

UWM concedes that it cannot demonstrate the existence of any actual damages. Because the existence of damages is an element of a claim for breach of contract, factual questions as to the enforceability of UWM's liquidated damages provision (UWM's only claimed source of damages), preclude summary judgement.

Valid liquidated damages provisions represent an agreed-upon formula between the parties. The parties here never negotiated nor agreed to the liquidated damages provision UWM is seeking to enforce. Sarah Deciantis, UWM's chief marketing officer, confirmed that the Wholesale Broker Agreement is a standardized

19

agreement. ECF No. 35-2, PageID.358, 361 (pp. 9, 19-20). Ms. Deciantis confirmed that brokers had no input into the liquidated damages provision and the final number was determined by UWM's legal counsel. *Id.*, PageID.371 (p. 60) (brokers "did not have input into what the liquidated damages would be."); PageID.404 (p. 193); Exh. 6 at 61. Similarly, Mr. Tucsok testified that the liquidated damages provision was presented to brokers as a required provision. ECF No. 35-6, PageID.487 (p. 35).

Courts only enforce liquidated damages provisions when the court can see that the parties actually agreed upon a formula that to compute uncertain damages in case of breach because "[a] liquidated damages provision is simply an agreement by the parties fixing the amount of damages in the event of a breach and is enforceable *if the amount is reasonable with relation to the possible injury suffered and not unconscionable or excessive*." *St. Clair Med., P.C. v. Borgiel*, 270 Mich.App. 260, 270-271; 715 N.W.2d 914 (2006) (emphasis added).

The reasonableness of a liquidated damages clause "is a function, at least in part of the accuracy with which such stipulated damages approximate the actual damages incurred by the parting seeking enforcement of the liquidated damages provision." *In Re Constr. Diversification, Inc.*, 36 B.R. 434, 436 (Bankr. E.D. Mich. 1983) ; *Papo v. Aglo Rests.*, 149 Mich.App. 285, 294; 386 N.W.2d 177 (1986). In making this comparison, it is not necessary for the court or the parties to estimate actual damages with certainty; however, the court must make some estimate from the

20

available evidence to determine whether the liquidated damages clause was a *reasonable* approximation of actual damages. *Competition, Ltd. v. Mosier, Inc.*, 1987 U.S. Dist. LEXIS 15378 (W.D. Mich. Sep. 29. 1987); *Constr. Diversification*, 36 B.R. at 436.

Evidence demonstrates that the liquidated damages provision is really an unenforceable penalty provision. UWM referred to the liquidated damages provision as a penalty and fine upon brokers. See e.g., Exhs. 8, 9 ("UWM is moving forward with legal action enforcing the penalties laid out and agreed to in the contract.").

Unlike genuine liquidated damages, a penalty is a sum inserted in a contract *not* as the measure of compensation for breach, but rather as a *punishment* for breach. *Edoff v. Hecht*, 270 Mich. 689, 697; 260 N.W. 93 (1935). Liquidated damages provisions that do not attempt to approximate actual damages in the event of a breach are *penalties and unenforceable*. *UAW-GM Human Res. Ctr. v KSL Rec. Corp.*, 228 Mich.App. 486, 508; 579 N.W.2d 411. "A liquidated damage clause is *void as a penalty* if it provides for an amount of damages that is *unreasonable* in light of the possible injury suffered in the event of a breach." *In re Exemplar Mfg. Co.*, 331 B.R. 704, 711-12 (Bankr. E.D. Mich. 2005) (emphasis added, internal citation omitted).

Before accepting and enforcing a liquidated damages provision, the court must examine it and determine whether the "figure is really in the nature of an attempted computation of the actual damages likely to result, or whether it has the effect of

21

exacting a penalty from the contract breaker." *Nichols v. Seaks*, 296 Mich. 154, 161; 295 N.W. 596 (1941). The liquidated damages provision at issue here was never discussed with District Lending before UWM purported to unilaterally add it via the purported amendment. Rather, UWM's upper management spun these figures from whole cloth after sitting in a room for a couple of hours. ECF No. 35-2, PageID.385 (pp. 114-115); PageID.390 (pp. 136-137). Ms. Deciantis testified that "several amounts were discussed," both more and less than $5,000, during a one-hour meeting. Exh. 6 at 33, 61-62, 65. Ms. Deciantis testified that the minimum amount of liquidated damages would be $50,000 regardless of the number of loans. *Id*. at 65.

Ms. Deciantis conceded that there was no attempt to compute the $5,000 per loan amount. *Id*. Ms. Deciantis further testified that UWM did not even look at any numbers to even attempt to quantify the alleged basis of the liquidated damages, although Ms. Deciantis claimed that the amount was broadly based on the technology and support UWM allegedly provides. *Id*. at 66. Ms. Deciantis conceded that much of the technology and support UWM allegedly supplies applies only to loans that are going through the UWM underwriting process, and thus these tools could not possibly serve as a basis for liquidated damages. See, e.g., Exh. 6 at 71-72, 74, 77, 80 (UTRACK, BOLT, InTouch, AUS, EASEDocs, UClose, VirtualClose apply only to UWM loans). Ms. Deciantis further confirmed that, before the implementation of All-In provision, UWM did not consider the fact that a loan went

22

to a competitor like Rocket Mortgage to be a damage, but rather was a cost of doing business. ECF No. 35-2, PageID.363-364 (pp. 26-27) (there was no expectation of a return from the services UWM provided to its broker partners); Exh. 10 at 137-139 (Ishbia). UWM's admission that the liquidated damages was a number concocted to penalize brokers raises genuine issues of material fact as to whether it is enforceable.

Moreover, under UWM's view, District Lending must pay at least $50,000 regardless of the severity of the breach. Thus, a breach based on sending 1-10 loans to Rocket Mortgage equals a $50,000 penalty, with an additional $5,000 per additional loan thereafter. It is unclear why damages for the first loan sent to Rocket Mortgage is ten times more than the damages for every loan after the tenth loan and UWM offers no explanation for this nonsensical incongruity. "[I]f a contract provides that breaches of different gravity shall be sanctioned with equal severity, it is highly likely that the sanction specified for the mildest breach is a penalty (that, or the sanctions for all the other possible breaches must be inadequate)." *XCO Int'l, Inc. v. Pac. Sci. Co.*, 369 F.3d 998, 1004 (7th Cir. 2004). Stated plainly, UWM sought to punish a one-loan violator with equal severity as a ten-loan violator, and this supports the conclusion that the alleged "liquidated damages" are nothing more than a thinly veiled penalty. Thus, even if there was some reasonable basis for a per loan liquidated damages amount of $5,000 (which there is not), a $50,000 minimum even for a single loan cannot possibly be viewed as anything other than a penalty.

23

UWM nonetheless contends that its liquidated damages are proper because its actual damages were difficult to ascertain. But UWM's representative could not explain what UWM's actual damages even were. ECF No. 35-2, Page ID.384 (pp. 110-111). Liquidated damages *must* be reasonably related to the injuries *actually suffered. Roland v. Kenzie*, 11 Mich.App. 604, 611; 162 N.W.2d 97 (1968). Here, there are none. Because the purpose of a liquidated damages clause is to compensate for loss, not punish, such a provision is enforceable *only when a loss has been sustained*; otherwise, a liquidated damages provision is an unenforceable penalty. *Howarth v. Feeney*, 1992 R.I. Super. LEXIS 18, 1992 WL 813502 at*3 (R.I. Super. Jan. 15, 1992); Restatement (Second) of Contracts §356 cmt (e) ("If ... it is clear that no loss at all has occurred, a provision fixing a substantial sum as damages is unenforceable.").[9] Similarly, UWM representatives testified that they had no evidence that Rocket Mortgage actually moves loans from the wholesale to the retail channel. Exhs. 3 at 47 (Gomez), 5 at 40-41 (McMacken) (no evidence that Rocket Mortgage would move loans from the wholesale to the retail channel).[10]

---

[9] As a matter of law and logic that UWM could not prove that it suffered any actual damages as a result of any loan District Lending sent to Rocket Mortgage. UWM does not even attempt to prove that any such loan would otherwise have gone to UWM instead of any of the other lenders District Lending was free to deal.

[10] It is also unclear why UWM could possibly be entitled to recover damages allegedly suffered by the wholesale channel of which UWM is only a part.

24

### III.    District Lending's Defenses Preclude Summary Judgment.

District Lending has raised numerous defenses which, if proven, entirely defeat UWM's claim. Because UWM does not and could not claim that these defenses should be dismissed, summary judgment in UWM's favor is improper because District Lending is entitled to raise and prove these defenses before a jury.

For example, District Lending asserts the defenses of waiver, estoppel and failure to mitigate by UWM. ECF No. 24, PageID.271-272. Specifically, UWM admittedly monitored loans its broker partners closed with other lenders. Exhs. 3 at 28, 37 (Gomez); 5 at 26-27, 42-43 (McMacken). Yet, for over a year, while alleged liquidated damages continued to accrue, UWM took no action as to District Lending. When it did finally file this lawsuit on December 13, 2023 (ECF No. 1), it then immediately sought to leverage its litigation as a method to reinstate its relationship with District Lending. Exh. 7 at 1 (email from UWM seeking to reinstate the relationship with a confirmation that District Lending would no longer use Rocket Mortgage or Fairway in order to "red carpet" treatment from UWM).

### Conclusion

District Lending respectfully requests that the Motion be denied.

Respectfully submitted,
MORGANROTH & MORGANROTH, PLLC
By: /s/ Jeffrey B. Morganroth
JEFFREY B. MORGANROTH (P41670)
JASON HIRSCH (P58034)

Dated: July 29, 2026          Attorneys for District Lending

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED WHOLESALE
MORTGAGE, LLC,

    Plaintiff(s),

    v.

MADISON ATRINA LLC d/b/a
District Lending,

    Defendant(s).

Case No. 2:23-cv-13176
Honorable Laurie J. Michelson

## BRIEF FORMAT CERTIFICATION FORM

I, Jason R. Hirsch, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

26

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

/s/ Jason R. Hirsch
Dated: July 29, 2026